Matter of Keilyn GG. (Marlene HH.) (2018 NY Slip Op 02226)





Matter of Keilyn GG. (Marlene HH.)


2018 NY Slip Op 02226


Decided on March 29, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 29, 2018

524832

[*1]In the Matter of the Guardianship of KEILYN GG., an Infant. MARLENE HH., Petitioner. KEILYN GG., Appellant.

Calendar Date: March 27, 2018

Before: Egan Jr., J.P., Lynch, Devine, Clark and Mulvey, JJ.


Theo Liebmann, Hofstra Law Clinic, Hempstead, for appellant.


Clark, J.

MEMORANDUM AND ORDER
Appeal from an order of the Family Court of Sullivan County (McGuire, J.), entered March 8, 2017, which, in a proceeding pursuant to Family Ct Act article 6, among other things, denied petitioner's motion for a special findings order pursuant to 8 USC § 1101 (a) (27) (J).
In January 2017, petitioner (hereinafter the mother) filed a petition seeking to be appointed guardian of her daughter, Keilyn [FN1] GG. (hereinafter the child). In support of the guardianship petition, the mother's attorney submitted an
affirmation requesting that Family Court make specific findings in the order of guardianship that would allow the child to apply to the United States Citizenship and Immigration Services (hereinafter USCIS) for special immigrant juvenile status (hereinafter SIJS). Family Court granted the mother permanent letters of guardianship, but denied the request for an order making special findings for the purpose of filing an SIJS application. The child now appeals.
Before a child may seek SIJS from USCIS, a state court with jurisdiction over the juvenile must first issue a special findings order determining that (1) the child is under the age of 21, (2) the child is unmarried, (3) the child is dependent upon a juvenile court or legally committed to an individual appointed by that court, (4) reunification with one or both parents is not viable due to abuse, neglect, abandonment or a similar basis under state law and (5) it would [*2]not be in the child's best interests to return to his or her native country (see 8 USC § 1101 [a] [27] [J] [i], [ii]; Matter of Jose YY., 158 AD3d 200, 201 [2018]; Matter of Marlene G.H. [Maria G.G.U.—Pedro H.P.], 138 AD3d 843, 845 [2016]). By issuing a special findings order, Family Court is not rendering an immigration determination (see Matter of Jose YY., 158 AD3d at 201; Matter of Marisol N.H., 115 AD3d 185, 189 [2014]; Matter of Marcelina M.-G. v Israel S., 112 AD3d 100, 109 [2013]); such order is merely a step in the process to assist USCIS and its parent agency, the Department of Homeland Security, in making the ultimate immigration determination (see Matter of Enis A.C.M. [Blanca E.M.—Carlos V.C.P.], 152 AD3d 690, 692 [2017]; Matter of Marcelina M.-G. v Israel S., 112 AD3d at 109).
There is no dispute that the first two criteria are met here. Indeed, the child is under the age of 21, as she was born on March 31, 2000, and she is unmarried. However, as in Matter of Jose YY. (supra), Family Court denied the application for a special findings order after erroneously determining that the third, fourth and fifth criteria were not met. With respect to the third criterion, Family Court's appointment of the mother as the child's permanent guardian constitutes the necessary declaration of dependency on a juvenile court (see Matter of Enis A.C.M. [Blanca E.M.—Carlos V.C.P.], 152 AD3d at 691; Matter of Fatima J.A.J. [Ana A.J.S.—Carlos E.A.F.], 137 AD3d 912, 913-914 [2016]; Matter of Antowa McD., 50 AD3d 507, 507 [2008]).[FN2]
Turning to the fourth criterion, which requires that "reunification with 1 or both . . . parents . . . not [be] viable due to abuse, neglect, abandonment, or a similar basis found under [s]tate law" (8 USC § 1101 [a] [27] [J] [i]), Family Court mistakenly interpreted this statutory language to mean that reunification with both parents must be impossible. Based on a plain reading of the statute, we, like the Second Department, "interpret the '1 or both' language to provide SIJS eligibility where reunification with just one parent is not viable as a result of abuse, neglect, abandonment, or a similar state law basis" (Matter of Marcelina M.-G. v Israel S., 112 AD3d at 110 [emphasis added], quoting 8 USC § 1101 [a] [27] [J] [i]; see Matter of Marisol N.H., 115 AD3d at 190-191). "[T]he fact that the mother was available as a custodial resource for [the child] does not, by itself, preclude the issuance of special findings under the SIJS statute" (Matter of Marcelina M.-G. v Israel S., 112 AD3d at 111; see Matter of Fifo v Fifo, 127 AD3d 748, 751 [2015]; Matter of Karen C., 111 AD3d 622, 623 [2013]).
Notwithstanding Family Court's mistaken application of the fourth criterion, this Court's authority to review the evidence is as broad as that of Family Court, and we may make our own factual determinations if the record is sufficiently complete (see Matter of Marlene G.H. [Maria G.G.U.—Pedro H.P.], 138 AD3d at 845; Matter of Haide L.G.M. v Santo D.S.M., 130 AD3d 734, 736 [2015]). Based upon our independent factual review of the record, which includes the affidavits of the mother, the child and the child's maternal grandmother, as well as limited testimony, we find that reunification with the child's father is not a viable option. In her affidavit, the mother sets forth specific instances in which the father perpetrated severe domestic violence against her in the presence of the child, and stated that she fled Honduras — where the father resides — to escape his abuse. The grandmother confirmed the mother's account of severe [*3]domestic abuse perpetrated by the father. The mother left the child in the care of the maternal grandparents until the child was brought to the United States in 2007. The affidavits of the mother, the grandmother and the child all establish that, after the mother fled Honduras, the father never provided for the child emotionally, physically or financially. In the child's words, after the mother left Honduras, the father "was never a part of [her] life at all." Together, this record evidence fully supports the conclusion that the child was abandoned by her father and, thus, that reunification with him is not a viable option (see Matter of Cristal M.R.M., 118 AD3d 889, 891 [2014]; Matter of Marcelina M.-G. v. Israel S., 112 AD3d at 110; Matter of Karen C., 111 AD3d at 623).
As to the fifth and final criterion, our independent review of the testimony and affidavits establishes that the child's best interests are served by remaining in the United States. In determining whether it would be in the child's "best interest to be returned to [his or her or the] parent's previous country of nationality or country of last habitual residence" (8 USC § 1101 [a] [27] [J] [ii]), Family Court must balance a number of factors, including the child's safety and well-being in each country (see Matter of Jose YY., 158 AD3d at 202; Matter of Juan R.E.M. [Juan R.E.], 154 AD3d 725, 727 [2017]; Matter of Diaz v Munoz, 118 AD3d 989, 990 [2014]; Matter of Marcelina M.-G. v Israel S., 112 AD3d at 114-115), the availability of a place to live and someone to care for the child were the child returned to his or her native country or place of last habitual residence (see Matter of Jose YY., 158 AD3d at 202; Matter of Gabriela Y.U.M. [Palacios], 119 AD3d 581, 583-584 [2014]; Matter of Alamgir A., 81 AD3d 937, 940 [2011]; Matter of Trudy-Ann W. v Joan W., 73 AD3d 793, 796 [2010]) and the relative educational and employment opportunities available to the child (see Matter of Jose YY., 158 AD3d at 202; Matter of Marcelina M.—G. v Israel S., 112 AD3d at 115).
The record reflects that, if the child were returned to Honduras, she would have no one to care for her and no prospect of obtaining an education or securing employment (see Matter of Gabriela Y.U.M. [Palacios], 119 AD3d at 583-584; Matter of Alamgir A., 81 AD3d at 940; Matter of Trudy-Ann W. v Joan W., 73 AD3d at 796). The affidavits of the mother, the grandmother and the child further establish that, were the child to return to Honduras, she would be exposed to violence and live in constant fear of gangs (see Matter of Juan R.E.M. [Juan R.E.], 154 AD3d at 727; Matter of Diaz v Munoz, 118 AD3d at 990). In contrast, it was established that, in the United States, the child lives with her emotionally supportive mother, stepfather and half siblings in a safe home environment, where she has the opportunity to obtain a college degree. At the time of the hearing, the child was a high school student, employed at a fast food restaurant and involved in school athletics, her church and other extracurricular activities. The child stated that she dreamed of becoming a Spanish or early childhood education teacher. Considering the foregoing, we find that it would not be in the child's best interests to be returned to Honduras (see Matter of Jose YY., 158 AD3d at 202; Matter of Juan R.E.M. [Juan R.E.], 154 AD3d at 727; Matter of Gabriela Y.U.M. [Palacios], 119 AD3d at 583-584). Based upon all of the criteria having been established, Family Court should have granted the request for a special findings order.
Egan Jr., J.P., Lynch, Devine and Mulvey, JJ., concur.
ORDERED that the order is modified, on the law, without costs, motion granted, it is declared, in accordance with 8 USC § 1101 (a) (27) (J), that: (1) the child is under 21 years of age; (2) the child is unmarried; (3) the child is dependent upon Family Court due to the March [*4]2017 guardianship order issued pursuant to Family Ct Act § 661; (4) reunification of the child with her father is impossible due to the father's abandonment of the child; and (5) it is not in the child's best interests to be returned to Honduras, and petitioner's appointment as guardian of the child shall extend until the child reaches the age of 21; and, as so modified, affirmed.



Footnotes

Footnote 1: Family Court misspelled the child's name as Kellyn in the decision and order from which the child appeals. 

Footnote 2: Inasmuch as Family Court's order — and the letters of guardianship issued upon that order — did not specifically state that the guardianship shall extend until the age of 21, as the mother requested in her guardianship petition, we hereby modify the order and direct that the guardianship shall extend until the child reaches the age of 21.